# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GREGORY ALAN GAYLOR,      )
                                    )
             Plaintiff,      )
                                    )
       v.                  )      Civil Action No.  06-1467 (RBW)
                                    )
DEPARTMENT OF JUSTICE      )
                                    )
             Defendant.     )
_____)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Department of Justice respectfully moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in this Freedom of Information Act case, 5 U.S.C. § 552, on the grounds that no records have been improperly withheld from the plaintiff, and defendant is, therefore, entitled to judgment as a matter of law.[1]

---

[1]Plaintiff should take notice that any factual assertions contained in the affidavits and other attachments in support of defendant's motion will be accepted by the Court as true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in the defendant's attachments.  See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992), Local Civil Rule 7.1(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In support of this motion, Defendant submits a declaration from; Kathy Hsu, Litigation Attorney for the Division's Freedom of Information Act/Privacy Act Unit (FOIA/PA Unit), Office of Enforcement Operations, Criminal Division of the United States Department of Justice; William E. Bordley, Associate General Counsel and the Freedom of Information/Privacy Act Officer, Headquarters, Office of General Counsel, United States Marshals Service (USMS); Dorothy Beaty, Freedom of Information and Privacy Acts Specialist, Interpol-U.S. National Central Bureau (USNCB), U.S. Department of Justice; and David M. Hardy, Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. The Court is also respectfully referred to the September 19, 2006 letter of Margaret Grafeld, Director of the Office of Information Programs and Services, United States Department of State, as well as Defendant's Memorandum of Points and Authorities, Statement of Material Facts Not in Dispute and Exhibits. A proposed order is also attached.

January 9, 2007                        Respectfully submitted,


                                       ___/s/_____
                                       JEFFREY A. TAYLOR, D.C. BAR # 498610
                                       United States Attorney


                                       ___/s/_____
                                       RUDOLPH CONTRERAS, D.C. BAR # 434122
                                       Assistant United States Attorney


                                       ___/s/_____
                                       JOHN HENAULT, D.C. BAR # 472590
                                       Assistant United States Attorney
                                       555 4th Street, N.W.
                                       Washington, D.C. 20530
                                       (202) 307-1249

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GREGORY ALAN GAYLOR,      )
                                     )
             Plaintiff,      )
                                     )
       v.                 )      Civil Action No.  06-1467 (RBW)
                                     )
DEPARTMENT OF JUSTICE      )
                                     )
            Defendant.    )
_____)

## STATEMENT OF MATERIAL FACTS AS TO WHICH
## THERE IS NO GENUINE ISSUE

Pursuant to Local Rule 7.1(h), the defendant hereby submits the following material facts as to which there is no genuine dispute. The declarations of the following officials: (1) Kathy Hsu; (2) Dorothy Beaty; (3) William E. Bordley; and (4) David M. Hardy, as well as (5) the September 19, 2006 letter of Margaret Grafeld, support these statements.

**I.       Criminal Division**

1. By letter addressed to the Criminal Division's Office of International Affairs dated April 24, 2001, Plaintiff made a request for records concerning his August 2000 extradition from Switzerland to the United States. Declaration of Kathy Hsu, ¶ 4.

2. By letter addressed to the Office of International Affairs dated May 11, 2001, Plaintiff renewed his request for documents in his name relating to his extradition. This request was received by the Criminal Division's FOIA/PA Unit on May 23, 2001. Attached to this letter was a copy of the April 2001 request and several fax cover letters dated the 7th, 17th and 18th of May 2001, addressed to the Office of International Affairs which demanded an immediate response to his request. Id. ¶ 5.

3. By letter addressed to the Plaintiff dated June 27, 2001, the FOIA/PA Unit acknowledged receipt of plaintiff's Privacy Act request. The letter advised plaintiff that his request had been assigned case number CRM-200100752P, and that when the appropriate searches were completed he would receive a response informing him what, if any, records had been located. Id. ¶ 6.

4. On June 15, 2001, Plaintiff sent the FOIA/PA Unit a letter seeking the status of his request. By letter addressed to the Plaintiff dated September 17, 2001, the FOIA/PA Unit responded to plaintiff's letter of June 15, 2001, and Plaintiff was advised that the FOIA/PA unit was still waiting for the Office of International Affairs to complete its search for responsive records and that when the appropriate searches were complete he would receive a response informing him what, if any, records had been located. Id. ¶ 7.

5. By a memorandum dated August 27, 2003, the Department of Justice's Office of Information and Privacy (OIP) forwarded to the Criminal Division, for processing and direct response to plaintiff, six documents, totaling nine pages, which originated or contains information of interest to the Criminal Division. The six items were initially located and subsequently referred to the Office of Information and Privacy by the State Department. Also attached was a copy of the State Department's referral slip dated August 11, 2003, and a copy of Plaintiff's March 2002 request. Id. ¶ 8.

6. By a letter addressed to the Plaintiff dated February 26, 2004, the FOIA/PA Unit informed plaintiff of the referral of six Criminal Division documents by OIP (Items 1-6). Plaintiff was also advised that Item 1 was being released to him in full and Items 2-6 were being

released in part. The portions omitted in Items 2-6 were done so pursuant to 5 U.S.C. 552(b) (2), (6), and (7) (C) . The letter advised Plaintiff of his right to seek an administrative appeal should he consider the response a denial of his request.  Id. ¶ 9.

7. By a letter addressed to OIP dated January 8, 2005, Plaintiff filed an administrative appeal to determine why his May 2001 request to the Criminal Division's Office of International Affairs had gone unanswered.  Id. ¶ 10.

8. By a letter addressed to the Plaintiff dated February 7, 2005, the Office of Information and Policy responded to plaintiff's January 2005 inquiry about his request. The Office of Information and Privacy informed plaintiff that the Criminal Division's FOIA/PA Unit was still in the process of responding to his request. The letter further stated that although the Act authorizes plaintiff to treat the Criminal Division's nonresponse as a denial of his request, however, due to limited resources, no determination of Plaintiff's administrative appeal could be made until after the Criminal Division made its determination. Plaintiff was also advised that he could again file an administrative appeal to OIP after the Criminal Division had completed its action and the material was denied.  Id. ¶ 11.

9. By a letter addressed to the Plaintiff dated April 4, 2006, the FOIA/PA Unit responded to plaintiff's May 11, 2001, request for records in his name. Plaintiff was notified that 43 documents (Items 1-43) were located within the scope of his request. Items 1-15 were released in full and Items 16-43 were released in part. The portions omitted in Items 16-43 were done so pursuant to 5 U.S.C. 552 (b) (6) and (7) (C) . Plaintiff was also advised that the Criminal Division located records which originated in the Federal Bureau of Investigation, U.S. Marshals

Service, INTERPOL, and the U.S. State Department. Pursuant to Department of Justice practice, these records were referred to those offices for review and direct response to Plaintiff.  Id. ¶ 12.

10. In further response to plaintiff's May 11, 2001, request, in a letter addressed to Plaintiff dated August 23, 2006, the Criminal Division advised Plaintiff that it conducted an additional search for records relevant to his request, and 98 records were located (Items 1-98A) . All 98 records have been released to Plaintiff either in full or major part. The portions omitted were done so pursuant to 5 U.S.C. 552(b) (6) and (7) (C).  Id. ¶ 13.

11. By a letter dated November 28, 2006, the Criminal Division informed Plaintiff that in preparation of the FOIA/PA Unit's August 23, 2006, release to him, the Unit believes it recopied and again included all of the materials from the April release (as discussed in paragraphs 12 and 13 of this declaration) . Plaintiff was further advised, however, that the FOIA/PA Unit is unable to now confirm that all materials released in April included in the August release. In order to be completely accurate, attached to the November 2006 letter was another copy of all the non-exempt materials sent to plaintiff in August. It is believed that this third release encompasses all non-exempt materials released to plaintiff from both the April and August 2006 releases. Plaintiff was further advised that should he believe that anything has been omitted in the third release to contact the  FOIA/PA Unit to correct the matter.  Id. ¶ 14.

## II.     Interpol

12. By transmittal of March 22, 2006, Dorothy Beaty, Freedom of Information and Privacy Acts Specialist, Interpol-U.S. National Central Bureau, U.S. Department of Justice ("USNCB") received from the Criminal Division a memorandum from Thomas J. McIntyre,

4

Chief, along with a copy of the Plaintiff's request and a referral of a forty-two (42) page document which originated from the USNCB. Declaration of Dorothy S. Beaty, ¶ 2.

13. Upon its receipt, USNCB assigned the referral FOIA number 2006-0074.[2] Id. ¶ 3.

14. By letter dated April 5, 2006, USNCB responded directly to Plaintiff concerning these documents.  Of the forty-two (42) referred pages, two pages were released in their entirety by USNCB, twenty-six pages were released in part with redactions taken pursuant to FOIA Exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Additionally, fourteen pages (of which eleven were duplicates; pages 6 &12; 8 & 9; 13 & 14; 15, 16 & 41; and 36 & 42) were withheld in their entirety pursuant to FOIA Exemption (b)(7)(D).  Id. ¶ 4.

## III.     USMS

15. On April 10, 2006, the United States Marshals Service ("USMS") Office of General Counsel received by fax a memorandum dated March 22, 2006, from the Department of Justice, Criminal Division requesting the USMS to review two documents in response to a Privacy Act request by Gregory Alan Gaylor.  The two pages were referred to the USMS for disclosure determination and direct response to the Plaintiff. Bordley Declaration of William E. Bordley, ¶2.

16. By letter dated April 14, 2006, the USMS responded to Plaintiff's request by releasing to plaintiff the two documents with information redacted and withheld pursuant to exemptions 2

---

[2]  A new FOIA/PA request received at the USNCB is assigned a two part numerical identifier.  The first part is the last two digits of the year in which the request is received.  The second part is comprised of four digits which represent the order in which the request was received during the calendar year.  Plaintiff's FOIA request was assigned FOIA #2006-0074, indicating that his request was the seventy-fourth request received in calendar year 2006.

and 7(C) of the Freedom of Information Act, 5 U.S.C. § 552(b)(2) and 5 U.S.C. § 552(b)(7)(C). Id. ¶ 3.

## IV.    FBI

16. By letter dated March 22, 2006, the Federal Bureau of Investigation ("FBI") received a request from the Department of Justice, Criminal Division requesting the FBI to review documents in response to a FOIA and Privacy Act request by Gregory Alan Gaylor. Six pages of documents were referred to the FBI for disclosure determination and response to the Plaintiff. Declaration of David M. Hardy, ¶ 5.

17. By letter dated April 18, 2006, the FBI advised plaintiff that pursuant to his request to DOJ, the FBI had reviewed six pages and was releasing five pages.  Plaintiff was advised that information was being withheld pursuant to exemptions (b)(2), (b)(6), (b)(7)(C), and (b)(7)(D) as well as exemption (j)(2) of the Privacy Act.  The records released in full and in part were provided to plaintiff as an attachment to the letter.  Plaintiff was advised of the procedure to appeal to the DOJ, Office of Information and Privacy ("OIP"). Id. ¶ 6.

## V.    DEPARTMENT OF STATE

18. By letter dated September 19, 2006, the United States Department of State ("State Department") responded to the Department of Justice, Criminal Division's referral of documents originating in the State Department by releasing all responsive documents to Plaintiff. A total of seven documents were found to be responsive to Plaintiff's FOIA request of May 11, 2001. These seven documents were released to Plaintiff in their entirety. Letter of Margaret P. Grafeld. See Sept. 19, 2006 Letter to plaintiff from Margaret Grafeld.

January 9, 2007                          Respectfully submitted,


                                          /s/
                                         JEFFREY A. TAYLOR, D.C. BAR # 498610
                                         United States Attorney


                                          /s/
                                         RUDOLPH CONTRERAS, D.C. BAR # 434122
                                         Assistant United States Attorney


                                          /s/
                                         JOHN HENAULT, D.C. BAR # 472590
                                         Assistant United States Attorney
                                         555 4th Street, N.W.
                                         Washington, D.C. 20530
                                         (202) 307-1249


7

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GREGORY ALAN GAYLOR,            )
                                )
                Plaintiff,       )
                                )
        v.                       )            Civil Action No.  06-1467 (RBW)
                                )
DEPARTMENT OF JUSTICE            )
                                )
                Defendant.       )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Department of Justice (DOJ) respectfully moves for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure in this Freedom of Information Act

(FOIA) case on the grounds that no records have been improperly withheld from plaintiff, and

defendant is, therefore, entitled to judgment as a matter of law.

In filing this motion, the DOJ relies upon the declarations of; Kathy Hsu, Litigation

Attorney for the Division's Freedom of Information Act/Privacy Act Unit (FOIA/PA Unit),

Office of Enforcement Operations, Criminal Division of the United States Department of Justice

("Hsu Decl."); William E. Bordley, Headquarters, Office of General Counsel Associate General

Counsel and the Freedom of Information/Privacy Act Officer of the United States Marshals

Service ("Bordley Decl."); Dorothy Beaty, Freedom of Information and Privacy Acts Specialist,

Interpol-U.S. National Central Bureau, U.S. Department of Justice ("Beaty Decl."); and David

M. Hardy, Section Chief of the Record/Information Dissemination Section ("RIDS"), Records

Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in

Washington, D.C. ("Hardy Decl."). The Court is also respectfully referred to the September 19,

2006 letter of Margaret P. Grafeld, Director of the Office of Information Programs and Services,

United States Department of State ("Grafeld letter"), as well as Defendant's Memorandum of

Points and Authorities, Statement of Material Facts Not in Dispute and Exhibits. A proposed

order is also attached.

This Court should dismiss plaintiff's action pursuant to Federal Rule of Civil Procedure

12(b)(6) because the Department of Justice, Criminal Division ("Criminal Division"),

Interpol-U.S. National Central Bureau, U.S. Department of Justice ("USNCB"), the United

States Marshals Service ("USMS"), the Federal Bureau of Investigation ("FBI") and the United

States Department of State ("State Department") processed plaintiff's FOIA request and released

all responsive non-exempt materials.  In withholding information, the agencies properly relied

upon FOIA Exemptions (b)(2), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E). Defendant is therefore

entitled to judgment in its favor, because no records were wrongfully withheld from the plaintiff.

The Declarations and Grafeld letter set forth the search for records of Plaintiff's FOIA request

and the basis for the agencies' withholdings in this case.

## INTRODUCTION

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and

concerns the processing of Plaintiff's FOIA request made to the United States Department of

Justice, Criminal Division and subsequently referred to four other agencies- the United States

Marshals Service ("USMS"), Interpol-U.S. National Central Bureau, U.S. Department of Justice

("USNCB"), Federal Bureau of Investigation ("FBI") and the United States Department of State

("State Department"). See Hsu Decl. ¶ 12. Plaintiff's FOIA request sought all documents relating

to his extradition from Switzerland to the United States in 2000. Id. ¶ 5.

2

## STATEMENT OF FACTS

Defendant incorporates by reference as its Statement of Facts, the Statement of Material Facts Not in Genuine Dispute, attached to Defendant's Motion for Summary Judgment.

## ARGUMENT

### I.    Motion for Summary Judgment Standard of Review

In a FOIA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  Fed. R Civ. P. 56(c); Alveska Pipeline Serv. Co, v. EPA, 856 F.2d 309, 313 (D.C. Cir. 1988) (conflict in declarations alone insufficient to preclude entry of summary judgment); Weisberg v. U.S. Dep't. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).  The Court exercises de novo review over FOIA matters, and the burden is on the agency to justify all non-disclosures. 5 U.S.C. § 552(a)(4)(B); U.S. Dep't. of Justice v. Reporters Comm. For Freedom of the Press, 489 U.S. 749, 755 (1989). In carrying its burden, agencies may rely on declarations of government officials which courts normally accord a presumption of expertise in FOIA as long as the declarations are sufficiently clear and detailed and submitted in good faith.  Oglesby v. Dep't. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); see Hayden v. National Security Agency, 608 F.2d 1381, 1387 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).  Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] if the "affidavits are 'relatively detailed, non-conclusory, and not impugned by evidence . . . of bad faith on the part of the agency.'" Public Citizen, Inc. v. U.S. Dep't. of State, 100 F. Supp. 2d 10, 16 (D.D.C. 2000) (quoting McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983). Once the Court

determines that the declarations are sufficient, it need not inquire further.  <u>Students Against</u>

<u>Genocide v. U.S. Dep't. of State</u>, 257 F.3d 828, 833 (D.C. Cir. 2001).  The agency is entitled to

summary judgment once it demonstrates that no material facts are in dispute and that each

document that falls within the class requested either has been produced, not withheld, is

unidentifiable, or is exempt from disclosure  <u>Id.</u>; <u>Weisberg</u>, 627 F.2d at 368.  As demonstrated

below, Defendant has made that showing here, and is, therefore, entitled to judgment in its favor.

## II.        Defendant Has Submitted Proper "Vaughn" Indices

In moving for summary judgment in a FOIA case, agencies must establish a proper basis

for their withholding of responsive documents.  "In response to this special aspect of summary

judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their

motions for summary judgment against FOIA Plaintiffs."  <u>Judicial Watch, Inc. v. U.S. Dept. of</u>

<u>Health and Human Services</u>, 27 F. Supp. 2d 240, 242 (D.D.C., 1998).  These declarations or

affidavits (singly or collectively) are often referred to as a <u>Vaughn</u> index, after the case of

<u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert</u>. <u>denied</u>, 415 U.S. 977, 94 S.Ct. 1564

(1974).  There is no set formula for a <u>Vaughn</u> index.  "[I]t is well established that the critical

elements of the <u>Vaughn</u> index lie in its function, and not in its form."  <u>Kay v. F.C.C.</u>, 976 F.

Supp. 23, 35 (D.D.C., 1997).  "The materials provided by the agency may take any form so long

as they give the reviewing court a reasonable basis to evaluate the claim of privilege."  <u>Delaney,</u>

<u>Midgail & Young, Chartered v. I.R.S.</u>, 826 F.2d 124, 128 (D.C. Cir. 1987).  <u>See</u> <u>also</u> <u>Keys v.</u>

U.S. Dept. of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Department of Justice, 844

F.2d 126, 129 (3rd Cir. 1988).[3]

The Vaughn Index serves a threefold purpose: (1) it identifies each document withheld;

(2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage

the interests protected by the claimed exemption.  See  Citizens Com'n on Human Rights v.

Food and Drug Admin., 45 F.3d 1325, 1326 (9th Cir. 1995).  "Of course the explanation of the

exemption claim and the descriptions of withheld material need not be so detailed as to reveal

that which the agency wishes to conceal, but they must be sufficiently specific to permit a

reasoned judgment as to whether the material is actually exempt under FOIA."  Founding

Church of Scientology of Washington, D.C., Inc. v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

Here, the Criminal Division, USNCB, USMS, FBI and the State Department have

submitted supporting declarations and/or separate Vaughn indices in support of the exemptions

taken.  Each agency declaration was prepared by an individual familiar with the handling of the

direct or referred request.

The declarations submitted in support of this motion meet the requirements of Vaughn v.

Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974), and

provide the Court with the requisite basis to grant Defendant's motion.

_____

[3] "All that is required, and that is the least that is required, is that the requester and the trial
judge be able to derive from the index a clear explanation of why each document or portion of a
document withheld is putatively exempt from disclosure."  Id.  "The degree of specificity of
itemization, justification, and correlation required in a particular case will, however, depend on the
nature of the document at issue and the particular exemption asserted."  Information Acquisition
Corp. v. Department of Justice, 444 F. Supp. 458, 462 (D.D.C., 1978).

### III.    The Criminal Division Conducted a Reasonable Search

#### A.    Applicable Legal Standard

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records.  Oglesby; Cleary, Gottlieb, Steen & Hamilton v. Dep't. of Health and Human Services, 844 F. Supp. 770, 776 (D.D.C. 1993).  The agency has an obligation to show that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby, 920 F.2d at 68; see SafeCard Servs. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991). The issue is not whether there might exist any other records possibly responsive to the request, but rather whether the search for responsive records was adequate.  Weisberg, 745 F.2d at 1485; Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  "'[T]he search need only be reasonable; it does not have to be exhaustive.'"  Miller v. U.S. Dep't. of State, 779 F.2d 1378, 1383 (8th Cir. 1985), citing Nat'l Cable Television Ass'n v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973).  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent.  Nation Magazine, 71 F.3d at 892 n.7.  Simply stated, the adequacy of the search is "dependent upon the circumstances of the case."  Truitt v. Dep't. of State, 897 F.2d 540, 542 (D.C. Cir. 1990).  The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate."  Steinberg v. U.S. Dep't. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg, 745 F.2d at 1485).

"An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." Miller, 779 F.2d at 1383; Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980). Once the agency establishes the adequacy of its search, the burden then shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. Miller, 779 F.2d at 1383. It is insufficient for a requester to attempt to rebut agency affidavits with purely speculative claims. See Carney v. U.S. Dep't. of Justice, 19 F.3d 807, 813 (2nd Cir. 1994); SafeCard, 926 at 1200; Maynard v. CIA, 986 F.2d 547, 559-560 (1st Cir. 1993).

**B.    The Criminal Division's Search was Reasonable**

In the present matter, because plaintiff specified that he sought records related to his extradition from Switzerland to the United States, the FOIA/PA Unit requested the Office of International Affairs (OIA) to search its records for responsive records. Hsu Decl. ¶ 15.

OIA provides advice and assistance on international criminal matters to the Attorney General and other DOJ components and entities, as well as state and local prosecutors. OIA coordinates the extradition of international fugitives as well as international evidence gathering. OIA also engages in the negotiations of new treaties, convention, and other agreements on international criminal matters. OIA is the only Criminal Division office that would maintain records pertaining to extraditions. Id. ¶ 16.

Pursuant to long-standing FOIA search procedures, a search sheet with a copy of the plaintiff's request was transmitted to OIA. The search sheet specifies the subject of the search. Experienced and designated personnel employed by the pertinent sections then undertake a search for responsive materials and report the results by means of individual, signed forms to the

7

Criminal Division FOIA/PA Unit. The search terms utilized by each section in a Privacy Act request are the requestor's name and any known alias that the requestor has provided. This process allows for an adequate search and ensures that all files likely to contain responsive material, should any exist, are searched and located. By this means, the Criminal Division aims to ensure that its searches fully meet the criteria established under the Freedom of Information Act, the Privacy Act, and interpretative decisional law. Id. ¶ 17.

In total, 98 records responsive to Plaintiff's request were located by OIA in the search conducted for CRM-200100752P and were released to plaintiff in its entirety or in substantial part. No pages were withheld in full and only minimal information essential to safeguarding the personal privacy of third parties was redacted. Id. ¶ 18.

Based on the above, and through all efforts described above, the Criminal Division has conducted an exhaustive search for records pertaining to plaintiff and no additional records pertaining to Plaintiff were located. The Criminal Division has conducted a good faith search that was reasonable and adequate under the circumstances. See id.

IV.    **Referrals to Other Agencies**

A.    **USNCB**

By transmittal of March 22, 2006, the USNCB received from the Criminal Division a memorandum from Thomas J. McIntyre, Chief, along with a copy of the Plaintiff's request and a referral of a forty-two (42) page document which originated from the USNCB. Beaty Decl. ¶ 2.

Upon its receipt, USNCB assigned the referral FOIA number 2006-0074. Id. ¶ 3. By letter dated April 5, 2006, USNCB responded directly to Plaintiff concerning these documents. Of the forty-two (42) referred pages, two pages were released in their entirety by USNCB,

twenty-six pages were released in part with redactions taken pursuant to FOIA Exemptions (b)(2) (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Additionally, fourteen pages (of which eleven were duplicates; pages 6 &12; 8 & 9; 13 & 14; 15, 16 & 41; and 36 & 42) were withheld in their entirety pursuant to FOIA Exemption (b)(7)(D). Id. ¶ 4.

  **B.**  **USMS**

  On April 10, 2006, the USMS Office of General Counsel received by fax a memorandum dated March 22, 2006, from the Department of Justice, Criminal Division requesting the USMS to review two documents in response to a Privacy Act request by Gregory Alan Gaylor.  The two pages were referred to the USMS for disclosure determination and direct response to the plaintiff. Bordley Decl. ¶ 2.

  By letter dated April 14, 2006, the USMS responded to plaintiff's request by releasing the two documents with information redacted and withheld pursuant to exemptions 2 and 7(C) of the Freedom of Information Act, 5 U.S.C. § 552(b)(2) and 5 U.S.C. § 552(b)(7)(C). Id. ¶ 3.

  The documents referred by the Criminal Division are records maintained by the USMS in the Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005) system of records.  Records maintained in this system are compiled for law enforcement purposes in connection with the USMS receipt, processing, transportation and custody of prisoners, the execution of federal arrest warrants, and the investigation of fugitive matters.  See Rule 4, Fed. R. Cr. Procedure, 18 U.S.C. § 4086, 28 U.S.C. § 566, and 28 C.F.R. § 0.111(a),(j), (k), (q).  As such, these systems of records are exempt from the access provisions of the Privacy Act pursuant to 5 U.S.C. 552a(j)(2).  See 28 C.F.R. § 16.101(a),(q).  Therefore, to

ensure maximum access, plaintiff's records were processed for disclosure pursuant to the FOIA, 5 U.S.C. § 552. Id. ¶ 4.

### C.    FBI

Similar to the USNCB and the USMS, the FBI also received a referral of documents from the Criminal Division. Hsu Decl. ¶ 12. Upon careful review, the six pages referred to the FBI from the Criminal Division have been further reprocessed to achieve maximum disclosure consistent with the access provisions of the Privacy Act and the FOIA. Every effort is being made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material. No reasonably segregable, nonexempt portions of information are being withheld from plaintiff. Copies of the reprocessed pages are attached to the Declaration of David M. Hardy. The exemptions asserted by the FBI as grounds for non-disclosure of portions of pages are Privacy Act Exemption (j)(2) and FOIA Exemptions 6, 7(C), and 7(D). Hardy Decl. ¶ 7.

### D.    State Department

The State Department also received a referral from the Criminal Division of documents relating to the plaintiff. Hsu Decl. ¶ 12. By a letter dated September 19, 2006, Margaret P. Grafeld, Director of the Office of Information Programs and Services responded to Plaintiff's May 11, 2001 letter to the Department of Justice which requested the release of certain material relating to his extradition from Switzerland in 2000. Seven of the relevant documents retrieved in response to Plaintiff's FOIA request originated with the Department of State and were therefore referred for disclosure determination and direct response to Plaintiff. No documents

were withheld by the State Department and all documents were thus released in full to Plaintiff.

See Grafeld Letter.

**V.      The Defendants Appropriately Withheld Certain Records Under FOIA Exemptions**

      **A.      The Applicability of Exemption 2 Invoked by the USNCB and USMS**

Pursuant to 5 U.S.C. § 552(b)(2) (" Exemption 2"), the Government is not required to

disclose records "related solely to the internal personnel rules and practices of an agency."  5

U.S.C. § 552(b)(2).  Exemption 2 applies primarily to two types of materials: (1) internal agency

matters so routine or trivial that they could not be "subject to ... a genuine and significant public

interest" and (2) internal agency matters of some public interest "where disclosure may risk

circumvention" of statutes or agency regulations.  <u>Department of Air Force v. Rose</u>, 425 U.S.

352, 369-70 (1976); <u>Schiller v. N.L.R.B.</u>, 964 F.2d 1205, 1207 (D.C.Cir. 1992); <u>National</u>

<u>Treasury Employees Union v. U.S. Customs Service</u>, 802 F.2d 525, 528-30 (D.C.Cir. 1986);

<u>Crooker v. Bureau of Alcohol, Tobacco & Firearms</u>, 670 F.2d 1051, 1073-74 (D.C.Cir. 1981);

<u>Truesdale v. U.S. Dept. of Justice</u>,  2005 WL 3294004, *4 - 5 (D.D.C., 2005); <u>Gonzalez v.</u>

<u>Bureau of Alcohol, Tobacco and Firearms</u>, 2005 WL 3201009, *6 (D.D.C., 2005); <u>Dorsett v.</u>

<u>U.S. Dept. of Treasury</u>, 307 F.Supp.2d 28, 35-36 (D.D.C., 2004); <u>Edmonds v. F.B.I.</u>, 272

F.Supp.2d 35, 50 (D.D.C., 2003).

Depending upon the nature of the information, documents will fall within either the "low

(b)(2) category" or the "high (b)(2) category."  <u>Schiller</u>, 964 F.2d at 1207. "Low (b)(2)"

information refers to internal procedures and practices of an agency, where disclosure would

constitute an administrative burden unjustified by any genuine and significant public benefit.

<u>Martin v. Lauer</u>, 686 F.2d 24, 34 (D.C.Cir. 1982); <u>see also</u> <u>Schiller</u>, 964 F.2d at 1207.  "Low

(b)(2)" information can be protected only if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice. See Schwaner v. Department of Air Force, 898 F.2d 793, 795 (D.C.Cir. 1990); Voinche v. F.B.I., 46 F.Supp.2d 26, 30 (D.D.C., 1999).

Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous communications, and other like administrative markings are exempt from disclosure. Coleman v. F.B.I., 13 F.Supp.2d 75, 78-79 (D.D.C., 1998), citing, Lesar v. U.S. Dept. of Justice, 636 F.2d 472 (D.C.Cir. 1980); see also Schiller, 964 F.2d at 1208 (protecting from disclosure internal agency time deadlines and procedures, recordkeeping directions, instructions on which agency official to contact for assistance, and guidelines on clearance procedures); Nix v. U.S., 572 F.2d 998, 1005 (4th Cir. 1978)(protecting cover letters of merely internal significance); Scherer v. Kelley, 584 F.2d 170, 175-78 (7th Cir. 1978)(protecting "file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references"); Voinche, 46 F.Supp.2d at 30 (protecting the file number for an informant and telephone extension of the Public Corruption Unit of the FBI's Criminal Investigation Unit); Wilson v. Department of Justice, 1991 WL 111457, at *2 (D.D.C., 1991)(protecting transmittal slips from low level officials). The notion behind this reasoning is that administrative agencies should not be burdened by responding to requests for trivial information unlikely to be the subject of public interest. Martin, 686 F.2d at 34.

### 1.      USNCB Properly Applied Exemption 2

Exemption (b)(2) of the FOIA sets forth an exemption for information relating solely to the internal rules and practices of an agency. Sensitive information consisting of an internal

INTERPOL-USNCB investigative case file number, which is a computer-generated file number was deleted from the documents released to Plaintiff. The numbers are used solely as an internal method of organization by USNCB and relate to the fashion in which files are maintained at USNCB. Also, the email address of a third-party was deleted from the documents released to Plaintiff. There is no public interest in the release of these numbers and mailing address. Thus, deletion of the numbers and email address is appropriate under (b)(2). Beaty Decl. ¶ 5.

**2.      USMS Properly Applied Exemption 2**

Exemption 2 allows an agency to withhold matter related solely to internal personnel rules and practices. Exemption 2 applies to matters either so routine or trivial that they could not be of genuine and significant public interest, or for disclosures that would risk circumvention of a statute or regulation or impede an entity's law enforcement activities. Exemption 2 was applied to withhold an internal reference number and a USMS credit card number. There is no legitimate public interest in disclosing information regarding the internal reference number. Disclosure of the credit card number would present an opportunity for misuse and fraud for persons with malicious intentions. The credit card and internal reference numbers meet the test of predominantly internal information set forth in Crooker v. BATF, 670 F.2d 1051 (D.C. Cir 1981), for withholding information pursuant to exemption 2. Bordley Decl. ¶ 6.

**B.      The Applicability of Exemption 6 Invoked by the Criminal Division and FBI**

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To make a claim under Exemption 6, the first inquiry is whether the requested information is contained in a personnel, medical, or similar file. See United States Department of State v. Washington Post Co., 456 U.S. 595, 598 (1982); N.Y. Times Co. v. NASA, 920 F.2d

13

1002, 1004 (D.C. Cir.1990).  In considering the scope of the "similar files" language in

Exemption 6, the Supreme Court has made clear that information that "applies to a particular

individual" may qualify for protection.  Washington Post, 456 U.S. at 602.  In Washington Post,

the Supreme Court recognized that Congress intended the phrase "similar files" to have "a broad,

rather than a narrow, meaning."  Id. at 600.  The D.C. Circuit accordingly has observed that

Exemption 6 "is designed to protect personal information in public records, even if it is not

embarrassing or of an intimate nature...." Nat'l Ass'n of Retired Fed. Employees v. Horner, 879

F.2d 873, 875 (D.C. Cir.1989). If the first question is answered in the affirmative, then the court

must determine whether the information is of such a nature that its disclosure would constitute a

clearly unwarranted privacy invasion. See Washington Post, 456 U.S. at 598. This second

inquiry requires the court "to balance 'the individual's right of privacy' against the basic policy of

opening 'agency action to the light of public scrutiny'...." United States Dep't of State v. Ray, 502

U.S. 164, 175 (1992).

### 1.    The Criminal Division Properly Applied Exemption 6

FOIA exemption 6 permits the withholding of:

> (6)    personnel and medical files and similar files the disclosure of which
> would constitute a clearly unwarranted invasion of personal privacy;

5 U.S.C. §5 562(b) (6).

Hsu Decl. ¶ 19.

FOIA Exemption 6 protects personnel and medical files and similar files. The disclosure

of which would constitute a clearly unwarranted invasion of personal privacy. See 5 U.S.C. §§

562 (b) (6) . FOIA Exemption 7 (C) protects records or information complied for law

enforcement purposes, production of which could reasonably be expected to constitute an

unwarranted invasion of personal privacy. See 5 U.S.C. §5 552 (b) (7)(C). Id. ¶ 20.

Exemptions 6 and 7(C) each require a balancing of the individual's right to personal privacy against the public's interest in shedding light on an agency's performance of its statutory duties. The requester's identity, purpose in making the request, and proposed use of the requested information have no bearing on this balancing test. Id. ¶ 21.

Pursuant to Exemptions 6, the Criminal Division's FOIA/PA Unit withheld third party information from:

February 2004 Release:

- From Item 2 - the name and telephone number of a paralegal.
- From Item 3 - the names of individuals employed by the United Marshals Service and INTERPOL.

April and August 2006 Release:

- From Items 31, 32, 33, 37, 41, 42, 43, 44, 45, 46, 47, 48, 53, 55, 56, 56(a), 57, 58, 59, 60, 61, 62, 66, 67, 70, 71, 71(a), 72, 74, 76, 78, 79, 80, 81, 82, 84, 85, 86, 89, 94, 95 - the names, initials, and/or other identifying information of paralegals and investigators employed by the Criminal Division's Office of International Affairs. From Items 32, 34, 37, 38, 40, 41, 43, 44, 47, 48, 49, 51, 54, 55, 56, 63, 64, 65, 68, 69, 73, 75, 76, 77, 83, 84, 86, 87, 90, 91, 92, 93, 96 - the names, initials, phone numbers, and/or other identifying information of paralegals and investigators employed by the State of New Hampshire's Department of Justice.
- From Items 31, 33, 35, 36, 53, 68, 73, 77, 87, 97 - the names and/or initials of individuals employed by INTERPOL.
- From Item 35 - the name of an individual employed the Department of State.
- From Items 35, 36 - the names and/or initials of individuals employed by United States Marshal Service.
- From Items 37, 40, 41, 42, 44, 47, 50, 52, 56(a), 73, 84, 85, 86, 90, 91, 95 - the names of and/or identifying information of third-party individuals, who authorities believed might have information regarding the whereabouts of plaintiff.

Id. ¶ 22.

The names withheld, as set forth above, were neither that of the requester, nor those of government attorneys, state or federal. Id. ¶ 23.

The items referenced in Paragraph 22 above, were compiled for the use of the Criminal Division's Office of International Affairs to extradite plaintiff, who was a fugitive, back to the United States. The Office of International Affairs, a component of the Office of Enforcement Operations, oversees the extradition of international fugitives. Here, plaintiff was convicted of criminal tax evasion and felony crimes of theft in April 1999. Plaintiff fled the United States shortly after the close of his criminal court proceedings and was eventually located and arrested in Switzerland. As such, the records here are clearly constituted as records compiled for law enforcement purposes. Id. ¶ 24.

The individuals whose identities have been protected all maintain a substantial privacy interest in not being identified with a criminal law enforcement investigation. Identifying individuals as either the subject of criminal investigations or being associated with such investigations can subject them to innuendo, embarrassment, and stigmatization or even harassment, retaliation and reprisals. Finally, identifying paralegals and investigators, state and federal, could subject these individuals to harassment, retaliation, and reprisals as well as increase the difficulties of duties which require a low profile. Id. ¶ 25.

On the other hand, revealing such information is unlikely to add to the public's understanding of how an agency works or how well it performs its statutory duties.[4] On balance, the FOIA/PA Unit determined that the substantial privacy interest which is protected by withholding this information outweighs any minimal public interest which would be served by

---

[4] Official information that sheds light on an agency's performance of its statutory duties falls squarely within the statutory purpose of the FOIA. That purpose is not fostered, however, by disclosure of information about private citizens that reveals little or nothing about an agency's own conduct. See United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 748, 773, 109 S.Ct. 1468, 1481-82 (1989).

its release. Such disclosure would be "clearly unwarranted" as required by 5 U.S.C. § 552(b) (6).
Id. ¶ 26.

### 2.    The FBI Properly Applied Exemption 6

5 USC. § 552 (b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Hardy Decl. ¶ 10.

When withholding information pursuant to this exemption, the FBI is required to balance the privacy interests of four individuals mentioned in the documents against any public interest in disclosure.  In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appears in the documents at issue.  The public interest in disclosure of the information is determined by whether the information in question would inform plaintiff or the general public about the FBI's performance of its mission to enforce federal criminal and national security statutes, and/or how the FBI actually conducts its internal operations and investigations.  As explained below, there is no legitimate public interest in the information that has been withheld pursuant to Exemption (b)(6). Id. ¶ 11.

Exemption (b)(6) has been asserted in conjunction with Exemption (b)(7)(C) to protect the names only of four members of the international law enforcement community.  The relevant inquiry here is whether public access to this information would violate a viable privacy interest of these individuals.  Disclosure of this identifying information could subject these individuals to unauthorized inquiries and harassment which would constitute a clearly unwarranted invasion of their personal privacy. Id. ¶ 12.

17

In balancing the legitimate privacy interests against any public interest in disclosure, the FBI has determined that there is no public interest in disclosure of these names as  this information would not shed light on the operations and activities of the federal government. Accordingly, the FBI properly withheld this information pursuant to Exemption 6.  Id. ¶ 13.

### C.    The Applicability of Exemption (b)(7)(C) Invoked by the Criminal Division, USNCB, USMS and FBI

The FOIA exempts from the requirement of disclosure

> (7)  records or information compiled for law enforcement purposes, . . . to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . .

5 U.S.C. § (b)(7)(C).  This exemption protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations.  Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice, 816 F.2d 730, 780 (D.C. Cir. 1987), modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S. 749 (1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996).  Indeed, the mere mention of identities of witnesses or other persons in law enforcement files in such a way as to associate them with criminal activity is subject to protection under Exemption 7(C).  Reporters Comm. for Freedom of the Press, 489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-96 (D.C. Cir. 1995); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

In addition, the names of law enforcement officers who work on criminal investigations have been protected against release by Exemption 7(C).  Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dept of Justice, 636 F.2d 472, 487-88 (D.C. Cir.

1980).  Similarly, individuals who provide information to law enforcement authorities, like the

law enforcement personnel themselves, have protectable privacy interests in their anonymity.

Computer Prof'ls for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dep't of Justice, 683

F. Supp. 273, 275 (D.D.C. 1987).  The fact that the requester might be able to figure out the

individuals' identities through other means, or that their identities have been disclosed

elsewhere, does not diminish the privacy interests at stake.  Fitzgibbon v. CIA, 911 F.2d 755

(D.C. Cir. 1990); Weisberg v. Dep't of Justice, 745 F.2d at 1476.

 Once a privacy interest has been established, it must be balanced against the public

interest, if any, that would be served by disclosure.  Albuquerque Publ'g Co. v. Dep't of Justice,

726 F. Supp. 851, 855 (D.D.C. 1989).  The public interest in disclosure is limited to the FOIA's

"core purpose" of shed[ing] light on an agency's performance of its statutory duties."  Reporters

Comm. for Freedom of the Press v. U.S. Dept of Justice, 489 U.S. 749, 773 (1989).  This

standard is not easily satisfied when law enforcement information pertaining to individuals is

sought, for there "is no reasonably conceivable way in which the release of one individual's

name . . . would allow citizens to know 'what their government is up to.'"  Fitzgibbon v. CIA,

911 F.2d 755, 768 (D.C. Cir. 1990).  See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56

(no public interest in disclosure of sensitive information DEA obtained about individuals and

their activities, where such material would not shed light on DEA's conduct with respect to the

investigation).  Furthermore, in order to overcome legitimate privacy interests, the requester

must not only demonstrate the existence of the public interest, but also that the public interest is

both significant and compelling.  Senate of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 588

(D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990).

 **1.    The Criminal Division Properly Applied Exemption (b)(7)(C)**

FOIA exemption 7(C) permits the withholding of:

> (7)     records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information .
> (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy.

5 U.S.C. §5 562(b)(7)(C).

Hsu Decl. ¶ 19.

FOIA Exemption 7(C) protects records or information complied for law enforcement purposes, production of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. See 5 U.S.C. §5 552 (b) (7)(C). Id. ¶ 20.

Exemptions 7(C) requires a balancing of the individual's right to personal privacy against the public's interest in shedding light on an agency's performance of its statutory duties. The requester's identity, purpose in making the request, and proposed use of the requested information have no bearing on this balancing test. Id. ¶ 21.

Pursuant to Exemptions 7(C), the Criminal Division's FOIA/PA Unit withheld third party information from:

February 2004 Release (See Exhibit 7):

- From Item 2 - the name and telephone number of a paralegal.
- From Item 3 - the names of individuals employed by the United Marshals Service and INTERPOL.

April and August 2006 Release *(See* Exhibits 10 & 11):

- From Items 31, 32, 33, 37, 41, 42, 43, 44, 45, 46, 47, 48, 53, 55, 56, 56(a), 57, 58, 59, 60, 61, 62, 66, 67, 70, 71, 71(a), 72, 74, 76, 78, 79, 80, 81, 82, 84, 85, 86, 89, 94, 95 - the names, initials, and/or other identifying information of paralegals and investigators employed by the Criminal Division's Office of International Affairs. From Items 32, 34, 37, 38, 40, 41, 43, 44, 47, 48, 49, 51, 54, 55, 56, 63, 64, 65, 68, 69, 73, 75, 76, 77, 83, 84, 86, 87, 90, 91, 92, 93, 96 - the names, initials, phone numbers, and/or other identifying information of paralegals and investigators employed by the State of New Hampshire's Department of Justice.
- From Items 31, 33, 35, 36, 53, 68, 73, 77, 87, 97 - the names and/or initials of individuals employed by INTERPOL.
- From Item 35 - the name of an individual employed the Department of State.
- From Items 35, 36 - the names and/or initials of individuals employed by United States Marshal Service.
- From Items 37, 40, 41, 42, 44, 47, 50, 52, 56(a), 73, 84, 85, 86, 90, 91, 95 - the names of and/or identifying information of third-party individuals, who authorities believed might have information regarding the whereabouts of plaintiff.

Id. ¶ 22.

The individuals whose identities were withheld, as set forth above, were not the requester, nor where the names of government attorneys, state or federal, withheld. Id. ¶ 23.

The items referenced in Paragraph 22 above, were compiled for the use of the Criminal Division's Office of International Affairs to extradite plaintiff, who was a fugitive, back to the United States. The Office of International Affairs, a component of the Office of Enforcement Operations, oversees the extradition of international fugitives. Here, plaintiff was convicted of criminal tax evasion and felony crimes of theft in April 1999. Plaintiff fled the United States shortly after the close of his criminal court proceedings and was eventually located and arrested in Switzerland. As such, the records here are clearly constituted as records compiled for law enforcement purposes. Id. ¶ 24.

21

The individuals whose identities have been protected all maintain a substantial privacy interest in not being identified with a criminal law enforcement investigation. Identifying individuals as either the subject of criminal investigations or being associated with such investigations can subject them to innuendo, embarrassment, and stigmatization or even harassment, retaliation and reprisals. Finally, identifying paralegals and investigators, state and federal, could subject these individuals to harassment, retaliation, and reprisals as well as increase the difficulties of duties which require a low profile. Id. ¶ 25.

On the other hand, revealing such information is unlikely to add to the public's understanding of how an agency works or how well it performs its statutory duties.[5] On balance, the FOIA/PA Unit determined that the substantial privacy interest which is protected by withholding this information outweighs any minimal public interest which would be served by its release. Such disclosure would be "clearly unwarranted" as required by 5 U.S.C. § 552(b)(6). Since this is the higher of the two standards of invasion of privacy, the release of this information also would be "unwarranted" as required by 5 U.S.C. § 552 (b) (7) (C). Id. ¶ 26.

**2.      The USNCB Properly Applied Exemption (b)(7)(C)**

Exemption (b)(7)(C) sets forth an exemption for information compiled for law enforcement purposes, the disclosure of which would constitute an unwarranted invasion of personal privacy. The materials deleted under Exemption (b)(7)(C), consist of the names and initials of special agents, INTERPOL law enforcement and clerical personnel who work on

---

[5] Official information that sheds light on an agency's performance of its statutory duties falls squarely within the statutory purpose of the FOIA. That purpose is not fostered, however, by disclosure of information about private citizens that reveals little or nothing about an agency's own conduct. See United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 748, 773, 109 S.Ct. 1468, 1481-82 (1989).

investigations for USNCB and third-parties information. The disclosure of their identities would be an unwarranted invasion of their personal privacy. Release of these individuals' identities would constitute an unwarranted invasion of privacy by seriously prejudicing their effectiveness in the conduct of other cases to which they may be assigned. Public acknowledgment of the identities of these individuals would subject them to possible undue pressure from the Plaintiff or other individuals who may seek to prejudice the outcome of INTERPOL investigations or to obtain unauthorized access to information about them for purposes of harassment or intimidation. There is no public interest in the release of the identities of these INTERPOL-USNCB personnel or third-parties. These individuals have a privacy interest in not having his or her name involuntarily disseminated to the public. Beaty Decl. ¶ 6. Accordingly, the withholding of the above information should be upheld under 7(b)(C). See id.

        **3.**      **The USMS Properly Applied Exemption (b)(7)(C)**

Exemption 7(C) allows an agency to withhold records or information compiled for law enforcement purposes to the extent that production could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C). This exemption was applied to the two documents released to plaintiff to withhold the USMS employees' names and dates of birth, along with the names of other third-party individuals and their phone numbers. Plaintiff presented no legitimate public interest in disclosing the identifying information regarding USMS employees and third-party individuals. To the contrary, the release of the identities and identifying information could subject these individuals to unwarranted public attention, embarrassment, harassment, and annoyance for being associated with a criminal law enforcement matter. Releasing this information would not shed any light on the USMS's performance of its statutory duties. Therefore, there is no legitimate public interest that would

23

outweigh the privacy of these individuals.  Disclosure to the plaintiff would be equivalent to disclosure to the public, and, as such, would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. §552(b)(7)(C). Bordley Decl. ¶ 5.

### 4.    The FBI Properly Applied Exemption (b)(7)(C)

Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subpart of the exemption.  See 5 U.S.C. § 552(b)(7).  In this instance, the harm that could reasonably be expected to result from disclosure is the invasion of the personal privacy of third party individuals and the revelation of the identity of a confidential FBI source. Hardy Decl.¶ 14.

Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes.  Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency.  FBI records indicate that the State of New Hampshire requested FBI cooperation in obtaining certain information regarding Gregory Gaylor in connection with felony charges of flight to avoid prosecution and theft charges. Thus, this investigation falls within the law enforcement duties of the FBI. Id. ¶ 15.

5 U.S.C. § 552 (b)(7)(C) exempts from disclosure:

> records or information compiled for law enforcement purposes,
> but only to the extent that the production of such law enforcement
> records or information . . . could reasonably be expected to constitute
> an unwarranted invasion of personal privacy . . . .

Id. ¶ 16.

When withholding information pursuant to this exemption, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure.  In asserting this exemption, each item of information was examined to determine the degree and nature of the privacy interest of each individual whose name and/or identifying information appears in these records.  The public interest in disclosure of this information is determined by whether the information in question would inform plaintiff or the general public about the FBI's performance of its mission to enforce federal criminal and national security statutes and/or how the FBI actually conducts its internal operations and investigations.  As explained below, there is no legitimate public interest in the information that has been withheld pursuant to Exemption (b)(7)(C). Id. ¶ 17.

Exemption (b)(7)(C) has been asserted in conjunction with Exemption (b)(6) to protect the names of four members of the international law enforcement community.  The relevant inquiry here is whether public access to this information would violate a viable privacy interest of the subjects of such information.  Disclosure of this identifying information could subject these individuals to unauthorized inquiries and harassment which could constitute an unwarranted invasion of their personal privacy.  The rationale for protecting foreign law enforcement personnel pursuant to Exemption (b)(7)(C) is the same as that articulated for Exemption (b)(6), supra. Id. ¶ 18.

In balancing the legitimate privacy interests against any public interest in disclosure, the FBI has determined that there is no public interest in disclosure of these names as this information would not shed light on the operations and activities of the federal government.  Accordingly, the FBI properly withheld this information pursuant to Exemption (b)(7)(C). Id. ¶ 19.

25

**D.      The Applicability of Exemption (b)(7)(D) Invoked by the USNCB and FBI**

Exemption 7(D):

> Exemption 7(D) of the FOIA exempts from mandatory disclosure records or
> information compiled for law enforcement purposes if the disclosure:
> could reasonably be expected to disclose the identity of a confidential source,
> including a State, local, or foreign agency or authority or any private institution
> which furnished information on a confidential basis, and, in the case of a record
> or information compiled by a criminal law enforcement authority in the course of
> a criminal investigation or by an agency conducting a lawful national security
> intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D).  Exemption 7(D)'s "paramount objective" "is to keep open the

Government's channels of confidential information."  Birch v. United States Postal Serv., 803

F.2d 1206, 1212 (D.C. Cir. 1986).[6]

When invoking Exemption 7(D), the agency must demonstrate, through the use of

reasonably detailed affidavits, that the information was compiled for a law enforcement purpose,

that an informant provided the information under either an express or an implied promise of

confidentiality and, under the first clause of 7(D), that disclosure could reasonably be expected

to disclose the source's identity.  United States Dep't of Justice v. Landano, 508 U.S. 165, 171-72

(1993).

Law Enforcement purpose:  "[T]he term 'law enforcement purpose' is not limited to

criminal investigations but can also include civil investigations and proceedings in its scope."

---

[6]   The term "confidential source" is very broad.  See, e.g., Gula v. Meese, 699 F. Supp. 956,
960 (D.D.C. 1988) (crime victims); Putnam v. United States Dep't of Justice, 873 F.Supp. 705, 716
(D.D.C. 1995) (medical personnel).  Moreover, the term "confidential" signifies that the information
was provided in confidence or in trust, with the assurance that it would not be disclosed to others.
Dow Jones & Co. v. Department of Justice, 917 F.2d 571, 575-76 (D.C. Cir. 1990).  As such, "the
question is not whether the requested document is of the type that the agency usually treats as
confidential, but whether the particular source spoke with an understanding that the communication
would remain confidential."  United States Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993).

26

Mittleman v. Office of Personnel Management, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997), citing Pratt v. Webster, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982). When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987), citing Pratt v. Webster, 673 F.2d 408, 418 (D.C. Cir. 1982). A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'" Keys, 830 F.2d at 340, quoting Pratt, 673 F.2d at 421.

Confidentiality:  If an individual has not been given an express promise of confidentiality, the agency may demonstrate that a source has been given an implied promise of confidentiality based upon the circumstances of the case. Landano, 508 U.S. at 179-80. The government may establish implied assurances of confidentiality by describing "generic circumstances in which an implied assurance of confidentiality fairly can be inferred." Id. at 179. For example, paid informants and those who only communicate "'at locations and under conditions which assure the contact will not be noticed' . . . justify the inference." Id.

The Court in Landano stressed two factors to be considered in determining whether an implied promise of confidentiality exists:  "the nature of the crime investigated and the witness' relation to it." Id. at 181. In applying these factors, a key consideration is the potential for retaliation against the source. Id. at 179-180; see also, Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (implied assurance of confidentiality found where crimes investigated were serious and violent and sources were "sufficiently close to" targets of investigation); Hale v. Dept. of Justice, 99 F.3d 1025, 1031 (10th Cir. 1996).

27

Information Exempted:  Once the agency has demonstrated that information was given by a confidential informant, Exemption 7(D) applies not only to the name of the source, but to other information as well.  The first clause of Exemption 7(D) not only protects obviously identifying information, such as an informant's name and address, but also all information which would tend to reveal the source's identity.  Pollard v. FBI, 705 F.2d 1151, 1155 (9th Cir. 1983). See also Birch, 803 F.2d at 1212 (protecting identity of third-party who acted as intermediary for confidential source); Stone v. Defense Investigative Serv., 816 F. Supp. 782, 788 (D.D.C. 1993) (protecting "information so singular that to release it would likely identify the individual"); Doe v. U.S. Dept. of Justice, 790 F.Supp. 17, 21 (D.D.C. 1992) (when source is well known to individual investigated, agency must protect "even the most oblique indications of identity"). The second clause of Exemption 7(D) broadly protects all "information furnished by a confidential source" to law enforcement authorities in the course of a criminal or lawful national security intelligence investigation.

Importantly, unlike some other FOIA exemptions, Exemption 7(D) does not require a balancing of public and private interests.  Parker v. Department of Justice, 934 F.2d 375, 380 (D.C. Cir. 1991) (the "judiciary is not to balance interests under Exemption 7(D)"); Jones v. FBI, 41 F.3d 238, 247 (6th Cir. 1994) ("[t]his exemption does not involve a balancing of public and private interests; if the source was confidential, the exemption may be claimed regardless of the public interest in disclosure").  Therefore, "once the agency receives information from a "'confidential source" during the course of a legitimate criminal investigation . . . all such information obtained from the confidential source receives protection.'"  Parker, 934 F.2d at 380 (editing by the court, quoting Lesar v. United States Dep't of Justice, 636 F.2d 472, 492 & n. 114 (D.C. Cir. 1980)).  Moreover, Exemption 7(D) continues to apply even after an investigation has

been closed, <u>Ortiz v. HHS</u>, 70 F.3d 729, 733 (2d Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1136 (1996),

and after the death of the source.  <u>Campbell v. Dept. of Justice</u>, 164 F.3d 20, 33 n.14 (D.C. Cir.

1998).

   <u>Waiver of confidentiality</u>:  Once an express or implied promise of confidentiality has

been established, it is extremely difficult to overcome.  In order to do so, the plaintiff must come

forward with "'absolutely solid evidence showing that the source . . . in a law enforcement

investigation has manifested complete disregard for confidentiality.'".  <u>Parker</u>, 934 F.2d at 378,

quoting <u>Dow Jones & Co. v. Department of Justice</u>, 908 F.2d 1006, 1011 (D.C. Cir.), <u>reh'g</u>

<u>denied en banc</u>, 917 F.2d 571 (D.C. Cir. 1990).  Alternatively, a waiver can be shown by prior

disclosure through authorized channels.  This requires the requester to show both that "'the exact

information given to the [law enforcement authority] has already become public, and the fact that

the informant gave the same information to the [law enforcement authority] is also public.'"

<u>Parker</u>, 934 F.2d at 378, <u>quoting</u> <u>Dow Jones & Co.</u>, 908 F.2d at 1011.  "The mere fact that a

confidential informant has testified at trial does not waive Exemption 7(D) protection for the

identity of the confidential source or information furnished by that source."  <u>Smith v. Bureau of</u>

<u>Alcohol, Tobacco and Firearms</u>, 977 F.Supp. 496, 501 (D.D.C. 1997), citing <u>Parker</u>, 934 F.2d at

379-80.

### 1.        The USNCB Properly Applied Exemption (b)(7)(D)

Exemption (b)(7)(D) of the FOIA protects "records or information compiled for law enforcement purposes (which) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source."   5 U.S.C. § 552 (b)(7)(D). Beaty Decl. ¶ 7.

When invoking Exemption (b)(7)(D), the agency must demonstrate that the information was compiled for a law enforcement purpose, that an informant provided the information under either an expressed or an implied promise of confidentiality and, under the first clause of (b)(7)(D), that disclosure could reasonably be expected to disclose the source's identity.  If an individual has not been given an expressed promise of confidentiality, the agency may demonstrate that a source has been given an implied promise of confidentiality based upon the circumstances of the case.  The government may establish implied assurances of confidentiality by describing "generic circumstances in which an implied assurance of confidentiality fairly can be inferred."  Such circumstances include the character of the crime being investigated, and the source's relation to the nature of the crime.  Once the agency has demonstrated that information was given by a confidential informant, Exemption 7(D) applies not only to the name of the source, but to other information as well.  Further, the first clause of Exemption 7(D) not only protects obviously identifying information, such as an informant's name and address, but also all information which would tend to reveal the source's identity. Id. ¶ 7.

Interpol is an international criminal police organization that was created to ensure and promote the widest possible mutual assistance between all criminal police authorities within the limits of the law existing in the different countries.   The organization has its secretariat in Paris, France, where experts in various branches of law enforcement work to assist its 186 member countries in coordinating law enforcement efforts by compiling and exchanging information on criminal activity.  Each member country designates a national law enforcement agency – the United States has appointed USNCB – referred to as its "national central bureau" (NCB), to serve as a message and information exchange between that country and Interpol.  Official inquiries emanating from law enforcement entities within a member country are channeled through its national central bureau to Interpol, and the route is reversed for responses.  The NCBs thus serve as transmitters between domestic law enforcers and Interpol, which, in turn, is the conduit of communication among the national central bureaus of different nations. Id. ¶ 8.

One of USNCB's most important functions is to respond to inquiries from foreign law enforcement agencies for confidential source information gathered in the United States for law enforcement purposes.  Likewise, USNCB often requests foreign law enforcement agencies to supply information that may be of interest to domestic law enforcement organizations.  The expectation of confidentiality in the exchange of this law enforcement information about criminal activity between member countries has been explicitly documented by the General Assembly, the governing body of Interpol, in resolutions adopted in 1974 and 1988. Id. ¶ 9.

The 1974 resolution (AGN/43/RES/1) states, in part, that the General Assembly "urges that in exchanging information, the ICPO-INTERPOL NCBs and the General Secretariat take into account the privacy of the individual and strictly confine the availability of the information

31

to official law enforcement and criminal justice agencies."    Similarly, the 1988 resolution

(AGN/57/RES/20) states:

> FOLLOWING the discussion, during the Meeting of Heads of
> National Central Bureaus, on the confidential nature of documents,
> information and other items related to criminal matters,
>
> CONVINCED of the need to protect the confidential nature of any
> such documents, information or items that one NCB may receive
> from another or from the General Secretariat,
>
> CONSIDERING that failure to respect confidentiality in such
> cases may adversely affect international police co-operation,
>
> The ICPO-Interpol General Assembly, . . .
>
> URGES NCBs:
>
>> - to protect the confidential nature of any documents,
>> information and other items relating to criminal matters
>> that they receive from other NCBs or from the General
>> Secretariat.
>>
>> - to take all necessary steps to ensure that such documents,
>> information and items are used solely for crime prevention,
>> crime investigation and criminal proceedings.

Id. ¶ 10.

Pursuant to this agreement among Interpol NCB's, with regard to the forty-two pages

referred by the Criminal Division in this case, USNCB withheld pursuant to FOIA Exemption

(b)(7)(D) identifying references to the foreign NCBs which provided information in confidence

to USNCB for law enforcement purposes.  Further, USNCB withheld portions of the information

contained in these documents because they reflected confidential information provided by a

foreign NCB on behalf of a foreign law enforcement agency that was conducting a criminal

investigation of Plaintiff.  The disclosure of these confidential sources and information would be

in violation of the expressed agreement of confidentiality among Interpol NCB's and would

seriously hamper the ability of USNCB to elicit cooperation in the future from foreign NCBs and

law enforcement organizations, thereby threatening future intelligence and investigative cases

against suspected criminals and terrorists. Id. ¶ 11. Accordingly, the USNCB's withholdings

should be upheld under b(7)(D). See id.

### 2.    The FBI Properly Applied Exemption (b)(7)(D)

5 U.S.C. § 552 (b)(7)(D) provides protection for:

> records or information compiled for law enforcement purposes,
> but only to the extent that the production of such law enforcement
> records or information . . . could reasonably be expected to disclose
> the identity of a confidential source, including a state, local or
> foreign agency or authority or any private institution which
> furnished information on a confidential basis, and, in the case of
> a record or information compiled by a criminal law enforcement
> authority in the course of a criminal investigation or by an agency
> conducting lawful national security intelligence investigation,
> information furnished by a confidential source.

Hardy Decl. ¶ 20.

Numerous confidential sources report to the FBI on a regular basis and are "informants"

in the common meaning of the term.  Some of the sources provide information under an express

assurance of confidentiality.  Further, during the course of an investigation, other individuals are

interviewed under circumstances from which an assurance of confidentiality can reasonably be

inferred.  These individuals are considered to be confidential informants or sources since they

furnish information only with the understanding that their identities will not be divulged outside

the FBI. Id. ¶ 21.

The release of a source's identity to the public would forever eliminate that source as a

future means of obtaining information and providing valuable assistance in the future.  Thus, the

identity of this confidential source and any specific information which would identify it has been withheld from disclosure pursuant to Exemption (b)(7)(D). Id. ¶ 22.

Exemption (b)(7)(D) is asserted to withhold the identity of a foreign law enforcement authority providing information to the FBI under an "express" assurance of confidentiality. The FBI has many agreements with foreign governments under which security and/or criminal law enforcement information is exchanged. The agreements specify the extent of confidentiality requested by the respective foreign authorities. While one agency might request confidentiality for its identity and not necessarily the information provided, another agency might request confidentiality for both its identity and the information provided, and yet another agency may request that its information be protected while it does not object its relationship with the FBI being disclosed. In this case, the agency has requested its relationship with the FBI be protected from disclosure. Id. ¶ 23. Accordingly, the FBI's withholdings should be upheld under b(7)(D). See id..

### E.    The Applicability of Exemption (b)(7)(E) Invoked by the USNCB

Exemption 7(E) of the FOIA provides protection for all information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

"[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." Mittleman v. Office of Personnel Management, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997) (citing Pratt v. Webster, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982)). When, however, a criminal law

enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing Pratt v. Webster, 673 F.2d 408, 418 (D.C. Cir. 1982)). A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'" Keys, 830 F.2d at 340 (quoting Pratt, 673 F.2d at 421).

The first clause of Exemption 7(E) affords "categorical" protection for "techniques and procedures" used in law enforcement investigations or prosecutions. Smith v. Bureau of Alcohol, Tobacco and Firearms, 977 F.Supp. 496, 501 (D.D.C. 1997) (citing Fisher v. United States Dep't of Justice, 772 F. Supp. 7, 12 n. 9 (D.D.C. 1991), aff'd, 968 F.2d 92 (D.C. Cir. 1992)). While Exemption 7(E)'s protection is generally limited to techniques or procedures that are not well known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness. See, e.g., Coleman v. FBI, 13 F.Supp. 2d. 75, 83 (D.D.C. 1998) (applying 7(E) to behavioral science analysis and details of polygraph examination); Perrone v. FBI, 908 F.Supp. 24, 28 (D.D.C. 1995) (applying 7(E) to type of polygraph test, type of machine used, polygraph questions and sequence). In justifying the application of Exemption 7(E) the agency may describe the general nature of the technique while withholding the full details. See e.g. Bowen v. FDA, 925 F.2d 1225, 1228 (9th Cir. 1991). The agency is not, however, required to describe secret law enforcement techniques, even in general terms, if the description would disclose the very information sought to be withheld. Coleman, 13 F.Supp. 2d at 83; Smith, 977 F.Supp. at 501.

Exemption 7(E)'s second clause separately protects "guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk

35

circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Accordingly, this clause of the Exemption

protects any "law enforcement guideline" that pertains to the prosecution or investigative stage

of a law enforcement matter whenever its disclosure "could reasonably be expected to risk

circumvention of the law."  See, e.g., PHE, Inc. v. United States Dep't of Justice, 983 F.2d 248,

251 (D.C. Cir. 1993) ("release of FBI guidelines as to what sources of information are available

to its agents might encourage violators to tamper with those sources of information and thus

inhibit investigative efforts"); Jimenez v. FBI, 938 F.Supp. 21, 30 (D.D.C. 1996) (applying 7(E)

to gang-validation criteria used by Bureau of Prisons to determine whether individual is gang

member).

> 1.    **The USNCB Properly Applied Exemption 7(b)(E)**

Exemption (b)(7)(E) affords protection to all law enforcement information that would

disclose techniques and procedures for law enforcement investigations or prosecutions, or would

disclose guidelines for law enforcement investigations or prosecutions if such disclosure could

reasonably be expected to risk circumvention of the law.  Plaintiff was denied access to 1 ½ line

of text which, if disclosed, would have revealed procedural guidance in the investigation. Beaty

Decl. ¶ 13. Accordingly, the USNCB's withholdings should be upheld under b(7)(E). See id.

## VI.    **Segregability**

The Court of Appeals for the District of Columbia Circuit has held that a District Court

considering a FOIA action has "an affirmative duty to consider the segregability issue sua

sponte." Trans-Pacific Policing Agreement v. U.S. Customs Service, 177 F.3d 1022, 1028 (D.C.

Cir. 1999).  The FOIA requires that if a record contains information that is exempt from

disclosure, any "reasonably segregable" information must be disclosed after deletion of the

exempt information unless the non-exempt portions are "inextricably intertwined with exempt

portions." 5 U.S.C. § 552(b); <u>Mead Data Central, Inc. v. U.S. Dept. of Air Force</u>, 566 F.2d 242,

260 (D.C.Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the

agency must provide a "detailed justification" rather than "conclusory statements". <u>Mead Data</u>,

566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification"

that the exempt material would effectively be disclosed. <u>Id</u>. All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated.

<u>Armstrong v. Executive Office of the President</u>, 97 F.3d 575, 578-79 (D.C.Cir. 1996).

Moreover, the agency is not required to "commit significant time and resources to the separation

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content." <u>Mead Data</u>, 566 F.2d at 261, n.55.

The Criminal Division, USNCB, USMS, FBI and State Deparment  have produced all

segregable information contained in their respective file records. To demonstrate that all

reasonably segregable material has been released, the agency must show "with reasonable

specificity" why a document cannot be further segregated. <u>Armstrong v. Executive Office of the</u>

<u>President</u>, 97 F.3d 575, 578-79 (D.C.Cir. 1996).

A.    **Segregability of the Withheld Criminal Division Records**

The Criminal Division reviewed the original, signed search response of the Office of

International Affairs, and verified that 98 records responsive to Plaintiff's request were located

by OIA in the search conducted for CRM-200100752P and were released to plaintiff in its

entirety or in substantial part. No pages were withheld in full and only minimal information

essential to safeguarding the personal privacy of third parties was redacted. Hsu Decl. ¶ 18. All

records were evaluated by the Criminal Division for segregability.  See Hsu Decl. The Criminal

Division has released to Plaintiff all material that could be reasonably segregated from the withheld material. See id.

### B.    Segregability of the Withheld USNCB Records

Each page was evaluated by USNCB for segregability.  The USNCB has released to Plaintiff all material that could be reasonably segregated from the withheld material.    A review of the redacted documents shows that no further information can be segregated without releasing information properly withheld under the FOIA.  With the exception of information withheld under FOIA Exemptions (b)(2), (b)(7)(C) (b)(7)(D) and b)(7)(E), the only information withheld by USNCB in the forty-two pages consists of the identifying information of foreign NCBs and a minimal amount of the confidential information that they provided to USNCB.   Thus, this information cannot be further segregated without violating (b)(7)(D). Beaty Dec. ¶ 13.

### C.    Segregability of the Withheld USMS Records

Two documents were released to plaintiff with the deletions made pursuant to exemption 7 and (b)(7)(C).  All non-exempt portions of responsive documents have been segregated and released to plaintiff. Bordley Decl. ¶ 7.

### D.    Segregability of the Withheld FBI Records

The FBI has processed and released to plaintiff all segregable information from the pages referred by DOJ.  The FBI carefully re-examined the records at issue in this case and is releasing herewith six pages with carefully tailored redactions pursuant to FOIA Exemption 6, 7(C), and 7(D).  The FBI has determined that the information withheld from plaintiff in this case, if disclosed, could reasonably be expected to cause an unwarranted invasion of the privacy interests of the third parties and reveal the identity of a confidential source. Hardy Decl. ¶ 24.

### E.    Segregability of the Withheld State Department Records

38

All documents located by the State Department were released in full to Plaintiff.

**CONCLUSION**

For the foregoing reasons, defendant responded properly to plaintiff's FOIA request and respectfully requests that the Court grant judgment in its favor and dismiss this case with prejudice.

January 9, 2007                              Respectfully submitted,

                                             __/s/_____
                                             JEFFREY A. TAYLOR, D.C. BAR # 498610
                                             United States Attorney


                                             __/s/_____
                                             RUDOLPH CONTRERAS, D.C. BAR # 434122
                                             Assistant United States Attorney


                                             __/s/_____
                                             JOHN HENAULT, D.C. BAR # 472590
                                             Assistant United States Attorney
                                             555 4th Street, N.W.
                                             Washington, D.C. 20530
                                             (202) 307-1249

40

## **CERTIFICATE OF SERVICE**

I certify that the foregoing Motion for Summary Judgment was served upon plaintiff by

depositing a copy of it in the U.S. Mail, first class postage prepaid to plaintiff:

Gregory Alan Gaylor
#30235
NH State Prison
PO Box 14
Concord, NH 03302-0014
PRO SE

on this 9th day of January, 2007.


_____
JOHN F. HENAULT
Assistant United States Attorney